ANNA PALLOCCO, as Administratrix, etc., of JOSEPH PALLOCCO, Deceased, Appellant, v. LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Fourth Department, November 23, 1921.

Railroads — Federal Employers' Liability Act — action for death of employee — sectionman not in employ of defendant railroad which was engaged in interstate commerce and not within Federal Employers' Liability Act while going home to dinner by ordinary route along defendant's tracks.

A sectionman, employed by the defendant railroad which was engaged in interstate commerce, was not in the employment of the railroad at the time of the injury which resulted in his death and was not, therefore, within the protection of the Federal Employers' Liability Act, where it appears that he was struck by one of defendant's locomotives, at a point more than 3,000 feet from his work, while he was going home to dinner, a distance of more than a mile from the place of his employment, by an ordinary route along defendant's tracks.

KRUSE, P. J., dissents.

APPEAL by the plaintiff, Anna Pallocco, as administratrix, etc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Ontario on the 25th day of February, 1920, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case, and also from an order, entered in said clerk's office on the same day, directing that the complaint be dismissed.

*James O. Sebring* [*Hamilton Ward* of counsel], for the appellant.

*John M. Brainard*, for the respondent.

DAVIS, J.:

Plaintiff's intestate was killed on April 29, 1917, while in the defendant's yards at Manchester, Ontario county, N. Y. He was employed by the defendant as a sectionman, and was engaged during the forenoon of the day in question at work on the tracks. The defendant concedes that it was engaged in interstate commerce, and if this man during the period of his employment was working shifting ties and repairing the tracks over which interstate commerce passed, he would be an employee of the defendant engaged in interstate commerce and

the plaintiff would be entitled to the benefit of the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143).

The decedent, under the direction of his foreman, ceased work at about ten minutes to twelve, but was expected to return and go to work at one o'clock. After putting his tools away he started for his home, a distance of more than a mile to the east, outside the yards. It was while he was traveling toward his home over what plaintiff claims was the usual route, on the defendant's premises, following what was known as the " return track," and at a point more than 3,000 feet from his work, that the decedent was struck by a locomotive backing along the return track. The accident occurred at a place where defendant was building a trestle for filling the cars with coal, and where there was some false work for putting in concrete which extended to within about thirty-eight to forty inches of the track, the decedent being caught between the tender and the false work, receiving injuries from which he soon thereafter died. The engine gave no signal or warning, and the decedent received none from any source. It was a cloudy day and there was some smoke blowing about, and the wind was blowing.

The only question properly presented here is: Was the decedent still in the employ of the company and engaged in interstate commerce while going home to dinner by an ordinary route on the defendant's property? The others sought to be presented are purely questions of fact, where now all inferences reasonably to be drawn as well as the facts proved, are to be viewed in a light most favorable to the plaintiff.

It has been held that an employee in coming to or going from his work in which he was immediately to engage or which he had just left, particularly if upon the employer's premises, is still engaged in and discharging a duty of his employment. (*North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248; *Erie R. R. Co.* v. *Winfield,* 244 id. 170, 173; *Knowles* v. *N. Y., N. H. & H. R. R. Co.,* 223 N. Y. 513, 516; *Lamphere* v. *Oregon R. & Nav. Co.,* 196 Fed. Rep. 336; *Di Paolo* v. *Crimmins Contracting Co.,* 219 N. Y. 580.) While the employee is being carried as a part of his daily service to and from his place of work (*San Pedro, L. A. & S. L. R. Co.* v. *Davide,* 210 Fed.

Rep. 870), and a temporary cessation or interruption of the labor does not terminate the relation of master and servant *Jones* v. *Virginian Ry. Co.,* L. R. A. 1915-C, 428; 83 S. E. Rep. 54; 74 W. Va. 666); where the employee is to eat his meals upon the premises or where food is to be obtained in some emergency, or an employee is leaving his place of work to seek shelter from a storm or going to answer the calls of nature (*Sztorc* v. *Stansbury, Inc.,* 189 App. Div. 388, and cases cited in opinion; *Zabriskie* v. *Erie R. Co.,* 92 Atl. Rep. 385; 86 N. J. L. 266); or where an injury to one employed while leaving the premises for the purposes of procuring a luncheon by means of stairs which afford the only means of going to or coming from the workroom (*Sundine's Case,* 218 Mass. 1), the employee is still engaged in his employment. (See L. R. A., 1916-A, 318.)

In the case last cited the question was raised that the claimant was not in the employ of the master while she was going to lunch. The court says: "The * * * contention * * * cannot be sustained. Her employment was by the week. It would be too narrow a construction of the contract to say that it was suspended when she went out for this merely temporary purpose and was revived only upon her return to the work-room. It was an incident of her employment to go out for this purpose. (*Boyle* v. *Columbian Fire Proofing Co.,* 182 Mass. 93, 102.) The decisions upon similar questions under the English act are to the same effect [citing cases]."

The *Sundine* case, just quoted, seems to be the strongest case on the doctrine that the servant does not lose his character as an employee simply by going to lunch. Upon principle and upon the authority of decisions in this State, the contrary would seem to be the proper rule. The master has ceased to control or direct his work or obtain the benefit of his time or labor. During the noon hour he is free to go where he pleases, and he may or may not return to work at one o'clock.

In *Matter of McInerney* v. *B. & S. R. R. Corp.* (225 N. Y. 130) a car inspector on the Buffalo and Susquehanna railroad was accustomed to go for his dinner to his home, which was not on the defendant's premises. On week days he went by the highway, and on Sundays he walked on the defendant's

right of way in order to avoid exposing himself in his working clothes. On Sundays he received pay for eleven hours, which included the one he was permitted to take for dinner. While going to dinner one Sunday, he received injuries causing death, by falling through a trestle which was within the limits of the railroad yards in which he performed certain of his duties. He had traveled more than half a mile from the yard where he stopped work before reaching the trestle where he fell. It was held that the accident did not arise in the course of or spring out of his employment. The court says: " It is true that it has been held many times that where an employer requests or customarily permits his employees to eat their meals upon his premises or in some place provided for them, the temporary interruption to their work thus caused will not be regarded as terminating their character as employees or as excluding them from the protection of such a law as our Compensation Act. [Citing cases.] But no case has been cited or found where an employee going for such a purpose to his home or other place selected by him a substantial distance away from the ' ambit ' of his employment and from the employer's premises has been regarded as so engaged in the latter's business that an accident then happening to him would be held to be one arising out of and in the course of his employment."

The court cites with approval *Hills* v. *Blair* (182 Mich. 20).

*Hills* v. *Blair* is a case arising over a State compensation statute, and the court held that when the crew stopped work about noon to eat their dinner and the decedent, who had not brought his dinner with him as was customary, received permission from the foreman to go to his house for it, his house being about half a mile away, and went by a route along the track on the employer's premises and was overtaken by a train and killed, the evidence was not sufficient to support the conclusion of law that the injury arose out of or in the course of the employment. This case cites Boyd on Workmen's Compensation (§§ 481, 486) and Ruegg on Employers' Liability and Workmen's Compensation (p. 377) as authority for the proposition.

In the opinion of HENRY T. KELLOGG, J., in *Sztorc* v. *Stansbury, Inc. (supra)* in holding that a man without food might

leave his employment temporarily to get it in an emergency, the court says: " It is wholly unlike those where accidents occur during the noon hour, when employees are on their way to or from the plant to get their noonday meals. In that class of cases injuries are received during a definite period set apart as belonging exclusively to employees, during which they may go where they choose and do what they please, subject to no orders from their employers and freed from all duty or responsibility in reference to their employment."

We conclude, therefore, that the decedent was not in the employment of the defendant while going for his lunch at such a distance from the regular place of his employment.

The judgment must, therefore, be affirmed.

All concur, except KRUSE, P. J., who dissents upon the authority of *Erie R. R. Co.* v. *Winfield* (244 U. S. 170).

Judgment and order affirmed, with costs.